### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**TANYA BROWN**                                                                                        **PLAINTIFF**

**V.**                                                    **4:24CV001098 JM**

**AREA AGENCY ON AGING**
**OF SOUTHEAST ARKANSAS, INC.**                                    **DEFENDANT**

### ORDER

Plaintiff Tanya Brown (Brown), a former employee of Defendant Area Agency on Aging

of Southeast Arkansas (Agency) alleges that she was discharged because of her race in violation

of Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e et seq., (Title VII) and 42 U.S.C.

§1981.  The Agency has moved for summary judgment.  (Docket # 31).  Brown has responded

and the Agency has filed a reply.

The Agency is a private non-profit organization that provides home care, transportation,

housing and senior center access for Southeast Arkansas's senior citizens.  The Agency operates

Southeast Arkansas Transportation (SEAT) a rural transit program designed to offer non-

emergency transportation to qualified residents of Southeast Arkansas.  The Agency employs

drivers who, because of their job duties, fall under the authority of the Federal Transit

Authorization (FTA) and federal Department of Transportation (DOT).  The Agency maintains a

zero-tolerance substance abuse policy for all employees in compliance with FTA and DOT legal

requirements.  The Agency's substance abuse policy gave it the right to conduct pre-

employment, post-accident and random drug testing of its employees.

Vault Health, an independent third-party company, administered the Agency's employee drug test protocol. Vault Health created a quarterly list of the Agency's drivers who would be tested in a specified month. Vault Health provided that list to Helen Jones, a nurse employed by the Agency. Nurse Jones then notified the designated drivers of the required test. When drivers who were not based in Pine Bluff were listed on the random drug testing list, Nurse Jones would typically have those drivers take their drug tests when they came to Pine Bluff for vehicle maintenance. Employee drug tests were typically administered by way of uranalysis with an independent laboratory conducting the test analysis and Vault Health's medical review officer reviewing the test results.

The Agency employed drivers to operate the vans and provide transportation to riders in Southeast Arkansas. The drivers' essential job functions included conducting daily pre-trip vehicle inspections, reporting problems immediately and following instructions to get authorized service and repair. The drivers were working in positions classified as DOT positions and were required to pass a pre-employment drug test and pass an annual physical and random drug test as conditions of employment.

Brown, a black female, was employed by the Agency from May 2018 to September 2019, when she resigned because of health reasons. During that time Brown took and passed numerous drug tests. On May 1, 2023, Brown reapplied for a driver position with the Agency. She tested negative on her pre-employment drug test and Mr. Biggs, a white supervisor for the Agency, hired her for the driver position and acted as her direct supervisor. Brown began work as a driver on June 22, 2023.

In August 2023, the van provided to Brown to drive for work needed repairs, so she took it to the Agency's shop in Monticello, Arkansas. She was given another van to drive, numbered

549.  Brown did not inspect the new van to verify whether it had all necessary components and parts. For approximately three weeks, the van did not have an oil stick, meaning the oil could not be checked.  Despite this, Brown completed pre-trip inspection paperwork indicating that she checked the van's oil. As a result, Mr. Biggs issued Brown a three-day suspension for falsifying her pre-trip inspection paperwork.  Brown does not dispute that the suspension occurred but protested the disciplinary action.

On March 4, 2024, Elaine Sledge, a white female who worked as a van inspector for the Agency, performed an inspection of Brown's 549 van.  Sledge inspected all vans assigned by the Agency to its drivers.  Sledge's inspection report for Brown's 549 van reflected that it was generally "okay" but the check engine light was on and the tire guard was damaged and needed attention.  Brown acknowledges that the tire guard was missing screws but denies that it was cracked or otherwise damaged.  The next day, March 5, 2024, Mr. Biggs called Brown in the early afternoon to ask whether she had taken the van to the Agency's Pine Bluff depot to get it repaired.  Brown told Mr. Biggs that Sledge lied in her report when she wrote that the tire guard was cracked.  Biggs asked Brown to come to his office in Monticello.  Brown contends that when meeting with Mr. Biggs he became angry and told her "never call Elaine a liar. . . .because we stick together."  Brown alleges that Biggs was "thinking about separating" her based on her statement.  Brown claims that she responded to Biggs statement that "a lie ain't got no color, Billy . . . . A lie's a lie.  You don't want nobody lying on you, do you?"  Biggs has submitted an affidavit denying that he made the statements attributed to him.  Brown concedes that Biggs never referred to Sledge's or Brown's race.

On March 6, 2024 Brown drove a client to Pine Bluff.  While there, Brown went to the Agency's depot to have her van repaired and to undergo her annual physical and training.

3

Brown was listed on Vault Health's quarterly random drug test list so the nurse sent Brown to take a random drug test. Brown contends that she was not initially on the random drug testing list but the nurse contacted Biggs who indicated he would talk to his supervisor, Randy Emerson. Shortly thereafter, Brown claims the nurse told her she was on the drug testing list. Brown received and signed a testing notification form indicating that she would be taking the random drug test. She traveled to a nearby clinic where a third-party nurse administered the drug test. Vault Health received the sample that afternoon and sent it for testing. The sample tested positive for opioids, specifically oxycodone.

On March 12, 2024, a Vault Health employee notified the Agency stating that they had not been able to contact Brown about her test result and asked for the Agency to tell Brown to contact them. On March 15, 2024, Vault Health informed Brown that the test result was positive. The nurse who contacted Brown advised her to send a list of all medications she was taking to Vault Health. On March 18, 2024, Vault Health informed Brown that they had reviewed the medication list and nothing would have caused a positive flag for opioids. Brown asked for a second test. The nurse explained that the lab would instead test her split sample. On March 21, 2024, Brown requested the split-sample test. The lab performing the split-sample test released the result of the test on April 8, 2024. The result was positive for opioids. On April 9, 2024, Biggs terminated Brown for failing the drug test.

<u>Standard of Review</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

4

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*,"[to] point out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir.2011) (en banc).

Discussion

Brown claims that the Agency committed race discrimination in violation of Title VII and Section 1981 when it terminated her employment. Claims of race-based employment discrimination under § 1981 are analyzed under the same framework as Title VII claims. *Stepps v. Bd. of Trs. of Univ. of Arkansas*, No. 4:21-CV-00986-LPR, 2024 WL 3345336, at *16 (E.D. Ark. July 9, 2024), *appeal dismissed*, No. 24-2636, 2024 WL 5398621 (8th Cir. Sept. 12, 2024). A plaintiff either relies on direct evidence or uses the *McDonnell Douglas* burden-shifting analysis to try to establish discriminatory motive. *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 802–805 (1973).

Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quotation and citation omitted). Direct evidence can be circumstantial, but it must carry strong causal proof. *Id.*    Brown alleges that Biggs statement "never call Elaine a liar. . . . because we stick together" provides direct evidence of discrimination.   However, Brown does not dispute that Biggs never referred to race at any time during her employment.  Further, Biggs did not refer to her or Sledge's race during their conversation.  Biggs statement is facially and contextually race neutral.  To find that the statement refers to a discriminatory bias would require inference.  See *McCullough v. Univ. of Arkansas for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009) (stating that direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias").   The Court finds that Brown has not submitted direct evidence of discrimination, and the analysis will proceed under the *McDonnell Douglas* framework.

Under *McDonnell Douglas,* Brown must first establish a *prima facie* case of

discrimination. *McDonnell Douglas,* 411 U.S. at 802. If she does, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *See Davis v. Jefferson Hosp. Ass'n,* 685 F.3d 675, 681 (8th Cir.2012). If the employer meets this burden, the "presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Id.*

A *prima facie* case of race discrimination requires that the plaintiff prove she "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." *Id.* Brown failed to present a *prima facie* case of race discrimination. Brown offered no probative evidence that demonstrates that she was meeting the legitimate expectation of her employer or that she was terminated under circumstances permitting an inference of discrimination. Further, even if Brown could be found to have presented a *prima facie* case she cannot establish that the Agency's articulated reason for her termination was pretext for unlawful discrimination.

Brown was terminated for failing the drug test and violating the Agency's zero-tolerance substance abuse policy. "An employee who violates a significant company policy, such as a prohibition on an employee not using, possessing or selling controlled substances on the employer's premises, is not meeting an employer's legitimate expectations." *Wright v. Winnebago Indus., Inc.*, 551 F. Supp. 2d 836, 847 (N.D. Iowa 2008). It is undisputed that the initial drug test administered by a third-party independent laboratory March 6, 2024 tested positive for opioids, specifically oxycodone. Further, the follow up split-sample test also resulted in a positive result. Brown denies the use of drugs and submits that she obtained a hair follicle test nearly a month after her termination which was negative. Brown's subsequent drug

test is irrelevant in the analysis because at the time the Agency made its decision to terminate Brown, it was unaware of the subsequent test. *Taylor v. Union Pac. R.R.,* No. 4:10CV01141 JLH, 2011 WL 3475502, at *5 (E.D. Ark. Aug. 9, 2011).  The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.  *McCullough v. Univ. of Arkansas for Med. Scis*., 559 F.3d 855, 861–62 (8th Cir. 2009).  "An employer need not be factually correct that an employee has committed a violation—the employer need only honestly believe that the employee committed the violation."  *Taylor* 2011 WL 3475502 at *5, citing, J*ohnson v. AT & T Corp.,* 422 F.3d 756, 762 (8th Cir.2005).

Brown also argues that similarly situated white employees were treated differently. However, none of the comparators were drivers who failed a drug test and were not terminated. The only driver included in Brown's comparator list was a white driver, Hensley, who was involved in a vehicle accident in an Agency van in 2023 and was not terminated.  However, Hensley's post-accident drug test was negative for drugs.  To be similarly situated, employees must be "involved in or accused of the same or similar conduct and are disciplined in different ways." *Pye v. Nu Aire, Inc*., 641 F.3d 1011, 1019 (8th Cir. 2011). The comparators listed by Brown are not similarly situated to her.

The Agency has offered a legitimate non-discriminatory reason for Brown's termination and Brown has offered no evidence demonstrating pretext. *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both "that the employer's articulated reason for the adverse employment action was false *and* that discrimination was the real reason.").  For these reasons, Brown's racial

8

discrimination claims fail.  Because Brown's substantive claims fail, she cannot maintain a claim for declaratory judgment under 29 U.S.C. § 2201.

Accordingly, Defendant's motion for summary judgment (Doc. No.31) is GRANTED.  A separate judgment will be entered dismissing the complaint with prejudice.

IT IS SO ORDERED this 24th day of June, 2026.


_____
James M. Moody Jr.
United States District Judge